IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

HEATHER A. JOHNSON, )
)
        Plaintiff, )
)
v. ) Case No. 12-3402-CV-S-ODS-SSA
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )

<u>ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born on July 29, 1971. Plaintiff has a GED and no past relevant work. Plaintiff filed an application for supplemental security income based primarily on attention deficit disorder, bipolar disorder, and depression.

Plaintiff was incarcerated in 2007 and 2008. Medical records from the Missouri Department of Corrections indicate that Plaintiff sought minimal medical treatment, failed to show for appointments, disregarded recommendations to stop smoking, and refused a physical examination. R. 17, 278, 280, 316. The records also show that Plaintiff's insight and judgment were adequate. R. 353.

On October 27, 2008, Plaintiff was evaluated for disability determination. R. 217-19. Upon examination, Plaintiff was alert, very cooperative, and pleasant. R. 218. Plaintiff's lungs were generally clear, she exhibited normal bowel sounds, her abdomen

was soft, she exhibited no edema, she was able to walk on her toes and heels without difficulty, and her gait and balance were normal. R. 219.

Plaintiff completed a function report on November 17, 2008, and reported she was able to do laundry and light cleaning. R. 165. She reported she scrapbooked and played online. R. 167.

On July 30, 2008, Plaintiff underwent a psychological examination. R. 211-14. Plaintiff reported that she played on the computer, cooked, cleaned the house, shopped, and managed her finances. R. 212. Plaintiff's speech was clear, logical, and coherent. R. 213. Plaintiff was cooperative and related well with the examiner. R. 213.

On January 15, 2009, Plaintiff was referred to Robert Pulcher, Ph.D., for a psychological evaluation to help determine eligibility to receive social security disability benefits. R. 232. Plaintiff arrived on time for her appointment, and it was noted she took care of her personal living affairs without help. R. 234. Plaintiff exhibited good eye contact, her insight and judgment were intact, and her speech was clear. R. 232. She reported that she scrapbooked and enjoyed walking as an exercise. R. 234. Dr. Pulcher opined that Plaintiff was able to understand and remember instructions and could sustain concentration and persistence in tasks. R. 231. Plaintiff told Dr. Pulcher that she had not looked for work since being released from prison because employment would keep her from receiving disability benefits. R. 233.

On January 27, 2010, Joan Bender, Ph.D., performed a psychological evaluation of Plaintiff. R. 254-56. During the evaluation, Plaintiff reported that she listened to music, cleaned the house, watched television, kept appointments, spent time with friends, and helped a friend design costumes. R. 255. Dr. Bender noted that Plaintiff's answers to questions were logical and relevant and Plaintiff was cooperative. R. 255. Dr. Bender opined that Plaintiff retained the ability to understand and recall moderately complex instructions, but did not appear able to concentrate and persist on even simple tasks for fulltime work. R. 256. Dr. Bender also opined that Plaintiff would not be able to consistently handle the interpersonal aspect of work, but she could adapt to change and manage her own funds. R. 256. Dr. Bender also completed a medical source statement checkbox form. R. 258-61. She opined that Plaintiff was markedly limited in the ability to maintain attention and concentration for extended periods, perform

2

activities within a schedule and maintain regular attendance, work in coordination with others, complete a normal workday or workweek without interruptions from psychological symptoms, interact appropriately with the public, accept instructions and respond appropriately to supervisors, get along with coworkers, and travel in unfamiliar places or use public transportation. R. 258-61.

An administrative hearing was held on June 7, 2010. Plaintiff testified she could not work due to lack of concentration, focus, and organizational skills. R. 29. Plaintiff testified she was granted disability benefits in 1999 due to psychological issues, but she eventually lost those benefits after she was incarcerated for writing bad checks. R. 31. Plaintiff testified that while she was in prison she did not receive regular therapy with a psychologist. R. 32. Since her release, Plaintiff has not been able to get into regular treatment for her psychological issues due to lack of finances. R. 32. Plaintiff testified that she is unable to get out of bed twice a week. R. 36.

On July 12, 2010, Frances Anderson, Psy.D., performed a psychological evaluation of Plaintiff. R. 368-76. Plaintiff's speech was logical, relevant, coherent, and goal-oriented. R. 370. Plaintiff did not exhibit any unusual gestures. R. 370. Plaintiff had adequate attention, concentration, and focus and did very well on a test of short-term memory, attention, and concentration. R. 371. She opined that Plaintiff could understand and remember at least moderately complex instructions. R. 371. Plaintiff also had adequate ability to socially interact. R. 371. Dr. Anderson also completed a medical source statement checkbox form and noted that Plaintiff had no more than mild limitations in work-related mental tasks. R. 374-75.

The administrative law judge ("ALJ") rendered his decision on January 7, 2011. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since October 29, 2008, the application date. R. 13. At step two, the ALJ determined Plaintiff had the following severe impairments: asthma, nicotine abuse, hypertension, upper left quadrant pain, leukocytosis, headaches, attention-deficit hyperactivity disorder, obsessive compulsive disorder versus obsessive compulsive traits, anxiety not otherwise specified, post-traumatic stress disorder, major depressive disorder, panic disorder with agoraphobia, and anti-

social traits. R. 13. At step three, the ALJ found Plaintiff did not have a listed impairment. R. 13. At step four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has marked limitation in carrying out complex instructions at the specific vocational preparation (SVP) 5-9; at SVP 3-4 her limitation is greater than mild limitation; she has no limitation in understanding, remembering, or carrying out short simple instructions; she can have no interaction with the public although the public can be in the area; and she has a mild limitation on working with coworkers and supervisors if the contacts are brief or superficial, directly related to work processes, and no more than occasional throughout the day.

R. 14. Next, the ALJ found, based on the vocational expert's testimony, that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as a mixing machine operator, core extruder, press operator, and a patcher. R. 19. The ALJ concluded Plaintiff was not disabled. R. 29.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. Medical Opinions of Record

Plaintiff makes several unpersuasive arguments that the ALJ improperly weighed the opinions of Dr. Bender and Dr. Anderson.[1] The ALJ gave good reasons for

---

[1] Plaintiff's long list of arguments include, but are not limited to, the following: it was

4

assigning minimal weight to Dr. Bender's opinion: she did not have a treating relationship with Plaintiff, her opinion was not supported by treatment notes or test results, and her opinions were inconsistent with the record as a whole. R. 17. In attempting to extol the falsity of Dr. Anderson's opinion, Plaintiff argues that Dr. Anderson's opinion is not consistent with the overall evidence of the record. However, Plaintiff's argument stops there and points to nothing in the record to show the inconsistency. Defendant does, however, provide an example that Dr. Anderson's opinion was consistent with the record—Robert Pulcher, Ph.D., made a similar finding in opining that Plaintiff could understand and remember instructions and sustain concentration and persistence in tasks. R. 231. The Court concludes that the ALJ properly gave reasons for assigning minimal weight to Dr. Bender's opinion and significant weight to Dr. Anderson's opinion.

### B. Plaintiff's Credibility

Plaintiff alleges the ALJ improperly assessed her credibility. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5)

---

error for the ALJ to weigh the doctors' opinions differently because neither doctor had a treating relationship with Plaintiff; Dr. Bender's opinion was entitled to more weight because her evaluation was performed at the request of the Christian County Family Support Division whereas Dr. Anderson's evaluation with performed at the order of the ALJ; it was error for the ALJ to note that Dr. Anderson was an "examining specialist" but not mention that Dr. Anderson was also not an examining specialist; the reports of both psychologists were "snapshots" in time. The Court rejects all of Plaintiff's arguments regarding the weight assigned to Dr. Bender and Dr. Anderson's opinions.

5

any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

Here, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's descriptions of her symptoms and limitations were generally inconsistent and unpersuasive. First, the ALJ notes that the clinical and objective findings in the record were inconsistent with allegations of total debilitation. R. 16. The ALJ considered that Plaintiff had not undergone "aggressive or extraordinary treatment" for her physical conditions including asthma, nicotine, abuse, hypertension, upper left quadrant paint, leukocytosis, and headaches. R. 16. The ALJ also noted that on examination, Plaintiff's lungs were generally clear, she exhibited normal bowel sounds, her abdomen was soft, she exhibited no edema, she was able to walk on her toes and heels without difficulty, and her gait and balance were normal. R. 16, 219.

The ALJ also noted that although the record supports a finding that Plaintiff has medically determinable mental impairments, her treatment has been limited. Despite her allegations, there is no documentation that she spends two days a week in bed. R. 36. Plaintiff has not required psychiatric hospitalizations. R. 16. Plaintiff was able to arrive on time for examinations and was alert, cooperative, pleasant, and oriented. R. 16, 218, 232, 255. Plaintiff related well with examiners, exhibited no acute emotional distress, and her speech was clear, logical, relevant, goal-directed, and coherent. R. 15, 213, 232, 255, 370. Plaintiff exhibited no unusual gestures and her attention and focus were adequate. R. 16, 213, 370. Plaintiff's insight and judgment were intact and she exhibited good eye contact. R. 16, 232, 353. During examination, Plaintiff exhibited no memory problems, and she was responsive and able to comprehend questions without difficulty. R. 16, 370.

The ALJ also properly considered the conservative nature of Plaintiff's treatment. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Although Plaintiff cites lack of financial resources and insurance as a reason that her treatment has been limited, the ALJ noted that Plaintiff was "still able to maintain a longstanding habit of smoking upwards of two packs of cigarettes a day." R. 17. As to lack of insurance, there is no indication that Plaintiff "fully availed herself of available resources such as medical assistance, free clinics, or emergent care." R. 17. During Plaintiff's incarceration, she

6

sought minimal treatment, failed to show for appointments, disregarded recommendations to stop smoking, and refused a physical examination. R. 17, 278, 280, 316.

The ALJ also considered Plaintiff's daily activities, which he described as inconsistent with disabling conditions. R. 17. Plaintiff reported she was able to take care of her personal care, prepare meals, perform household chores, sometimes go out alone, drive, grocery shop, manage finances, and play online. R. 165, 167, 234, 255. Further, Plaintiff reported that she scrapbooked, walked for exercise, spent time with friends, listened to music, watched television, helped a friend with costume design, and read the newspaper and magazines. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Finally, the ALJ considered Plaintiff's poor work history, which also goes against her credibility. R. 18, 156. In January 2009, Plaintiff reported to Dr. Pulcher that she was not looking for work because employment would keep her from getting disability benefits. R. 18, 233. "A lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Pearsall v. Massanari*, 274 F.3d at 1218.

Under the facts of this case, the Court cannot conclude that the ALJ improperly weighted Plaintiff's credibility regarding her subjective complaints of pain. The Court will not substitute its opinion for that of the ALJ, who was in a better position to assess credibility. *Brown v. Charter*, 87 F.3d 963, 965 (8th Cir. 1996). Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision.

## C. Remaining Arguments

Plaintiff makes several other broad arguments that the ALJ's RFC determination was "clearly erroneous," including that the ALJ's opinion failed to cite to medical evidence supporting the RFC. Despite Plaintiff's contention, the RFC was supported by medical evidence, including Dr. Anderson's opinion. R. 14-18.

Plaintiff also argues the ALJ failed to consider her obesity and the Appeals Council also failed to consider this evidence. As Defendant points out, Plaintiff's obesity was rarely mentioned in the record, which indicates that it was not a significant factor in Plaintiff's treatment. Further, the record is devoid of any evidence that a physician placed any physical limitations on Plaintiff based on her obesity or noted that her obesity affected her mental impairments. *See McNamara v. Astrue*, 590 F.3d 607, 611-12 (8th Cir. 2010).

Plaintiff also argues the ALJ erred in finding that Plaintiff's migraine headaches were not a medically determinable impairment and that the Appeals Council failed to consider evidence regarding Plaintiff's migraines. The ALJ noted that the record contained no medical signs or laboratory findings to substantiate migraines as a medically determinable impairment. R. 13. Although Plaintiff alleged to suffer from migraines, the ALJ properly found they were not a medically determinable impairment since the record is devoid of any definitive diagnosis of them.

Plaintiff also argues the ALJ's hypothetical question to the vocational expert ("VE") was incomplete and improperly based because it failed to address Plaintiff's obesity. The Court rejects Plaintiff's argument as the record contains few notations regarding Plaintiff's obesity. Plaintiff also makes a broad assertion that the hypothetical question posed to the VE was not supported by substantial evidence. The Court rejects Plaintiff's argument and concludes that the ALJ's question to the VE was consistent with the RFC finding.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 7, 2014   UNITED STATES DISTRICT COURT